[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is a dog bite case pursuant to Connecticut General Statutes § 22-357[1] Judgment was entered in favor of the other named defendants on the Third and Fourth Counts, as owners of the house where the dog was kept since it was rented to the other named defendants, the Cimino's in the First Count and Second Count.
The plaintiff argues that Gail Cimino and Samantha Cimino ("Barry") are liable since both Ciminos were keepers of the dog. The evidence showed that both defendants controlled the dog and cared for the dog. Both defendants placed the dog on a run in the back yard of their home. Under the statute both the Ciminos are liable. See Bailey v. DeSanti, 36 Conn. Sup. 156 (1980).
The three essentials that must be proven are "(1) damage was done to plaintiff's person by the dog (2) at the time of said damage the plaintiff was not committing a trespass or other to t, or was not teasing, tormenting or abusing the dog and (3) the defendants were its keepers". Id 157
The plaintiff ("John") who brings this action by his mother and next friend was years old at the time of the injury. The only other independent witness was Ronisha Gray ("Ronisha"), also about the same age, who was playing with John at the time of the dog bite. The dog's name was "Niko" a German Shepard breed.
John testified he was playing with Ronisha's puppies on the side of her house when Niko broke loose from the run he was attached to and chased them. Both he and Ronisha ran for the front of Ronisha's house to her front door. John tripped and Niko bit his calf on his left leg. Ronisha made it to the front of her house. Ronisha testified she and John were playing with her puppies and she saw Niko get loose from his run and she ran around to the front of her house and got into it via the front door. Both Ronisha and John denied that John teased or threw rocks at Niko on the day John was bitten. The properties are CT Page 10504 separated b a low rock fence some distance apart.
Samantha Cimino testified that Niko was leashed to his run, on the date of the bite. She further testified Niko was never let loose and was always kept on his run. She testified she came home around 5 o'clock p. m. and John was running through her yard with a stick in his hand, yelling and waving the stick at the dog. Samantha claimed her mother said something to John and he left their property. She then saw John come back doing basically the same thing. She said then the dog was brought inside because of John running through the yard. She further stated John came back again yelling and that Niko ran out of the house with her "Mom" running after Niko in front of her. Samantha stated that Niko was gone "a matter of minutes if that." Samantha never saw the dog bite John. She testified Ronisha brought back Niko holding him by the collar. Samantha didn't know the name of the little girl who returned the dog or see John later that day. She saw John about a week later playing basketball. On cross examination Samantha testified that she saw John play with Niko before in the yard without a problem. Samantha testified that Niko jumped up pushed the screen door open and ran out on the day of the bite. Samantha testified when they first moved there John played normally. Samantha never told the police that came to investigate the incident that John had tormented the dog.
Gail Cimino ("Gail") testified she first saw John that day about 4:30 p. m. running through their yard yelling. Niko was on the run that afternoon. Gail testified John had been to her house many times before and she had even made lunch for him on her deck prior to September 13, 1994. She testifies that she told John not to come to her backyard prior to the incident several times before. On that day Gail testified she saw John running through the yard after she told him to leave. He was carrying a stick and yelling. Gail testified she yelled at John even a third time so she brought the dog into the house. She testified that John came again and the dog jumped on the screen door and bolted out the door. She saw Niko chase John up the yard while she was yelling at the dog. She was not still calling the dog but saw John run into Ronisha's yard with Niko following him. She testified Ronisha brought the dog back 10 minutes later. Gail testified she never saw John get bitten by Niko and that she never saw John fall. Gail testified John was running through her yard for 6 months but she never compiained to his parents.
Gail testified she called the police a couple of times CT Page 10505 before. No reports were produced to corroborate this testimony.
The court concludes that John's testimony as to how he was bitten is the more likely explanation of the events that took place on September 13, 1994. John's testimony was corroborated by Ronisha as to where they saw Niko and what they were doing that day. The Cimino version of the incidents as to what John was doing may have happened on other occasions but the court concludes that the bite of September 13, 1994 on the side of Ronisha's house was as both he and Ronisha testified.
Accordingly the court finds that (1) Gail Cimino and Samantha Cimino now Samantha Cimino Barry are the keepers of the dog that bit John and that at the time of such damage. John was no committing a trespass or other tort, or was teasing, tormenting or abusing the dog.
The defendants argue that Exhibit B which has a box marked "provoked" pertaining to the dog in the incident report should lead the court to conclude that the plaintiff has not met her burden of proof to recover under the statute.[2] No evidence was produced to suggest such a finding. An examination of the report shows that it was reported by "Dorothea Cooper" an aunt who never witnessed the incident.
The plaintiffs produced medical bills that total $170.70 paid by Mary Belcher. The permanency in this case is ascribed to the scar on the left calf which although shocking at first has now healed well. The bite required 12 sutures to close. The scar is not remarkably I disfiguring. The plaintiff argues the effect on John as a result of the bite, interfered with his playing sports for a short period of time. John suffered sleeplessness until the wound healed in about two weeks. He missed two weeks of school without any impact on his academic standing. The claim for lost wages by Mary Belcher is rejected since the complaint does not make a specific claim for reimbursement (See Defendant's Post Trial Brief p. 4).
Accordingly judgment may enter on the First and Second Counts as follows in favor of the plaintiffs.
Economic Damages $ 170.70 Non-Economic Damages 4,500.00 __________ $4,670.70 CT Page 10506 __________ __________
Frank S. Meadow Judge Trial Referee